IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 18, 2006 Session

## JAMES W. MCDONNELL, JR., ET AL. v. CONSECO LIFE INSURANCE COMPANY, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-003288-04     Kay S. Robilio, Judge

No. W2005-02630-COA-R3-CV - Filed August 29, 2006

Plaintiffs James W. McDonnell, Jr., Faith McDonnell Campbell, Anne McDonnell Durell, and James W. McDonnell, III, appeal the trial court's grant of summary judgment holding that their causes of action are barred by applicable statutes of limitation. Because we find that the trial court failed to execute a final order disposing of all of Plaintiffs' asserted causes of action, we dismiss this appeal for lack of subject matter jurisdiction under Rule 3(a) of the Tennessee Rules of Appellate Procedure.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and HOLLY M. KIRBY, J., joined.

Glen Reid, Jr., and Douglas A. Black, Memphis, Tennessee, for the appellants, James W. McDonnell, Jr., Faith McDonell Campbell, Annie McDonnell Durell and James W. McDonnell, III.

Martin B. Bailey, Knoxville, Tennessee, for the appellee, Conseco Life Insurance Company.

Eugene J. Podesta, Jr., Memphis, Tennessee for the appellee, McDonnell Insurance, Inc.

### OPINION

*Factual Background and Procedural History*

In 1984, James McDonnell, Jr., ("James McDonnell") purchased a life insurance policy from McDonnell Insurance, Inc., ("Defendant McDonnell, Inc."). Philadelphia Life Insurance Company ("Philadelphia Life") was the initial issuer of the policy, but was later succeeded by Conseco Life Insurance Company ("Defendant Conseco"). At the time of the 1984 sale, James McDonnell asserts that Defendant McDonnell, Inc., represented the policy as a "vanishing premium policy" and stated that James McDonnell would be required to make large annual

payments for five or six years, after which time no further premiums would be required to maintain the policy in full force.

James McDonnell signed the life insurance contract on February 16, 1984, and subsequently paid annual premiums until 1991, at which time he inquired as to why the premiums had not vanished. In response to this inquiry, Philadelphia Life sent James McDonnell a letter stating:

> The Megalife policy is an interest sensitive, whole-life product. . . .
>
> . . . .
>
> . . . . The contract requires that the fixed premium be paid for the first five policy years. . . . After the fifth year, the policyholder may pay less than the fixed premium but he must pay at least the minimum premium. This is necessary to maintain the guaranteed minimum cash value stated in the policy. The vanishing point is the point at which the cash value is large enough to carry to age 100 with no future premiums and without violating the minimum cash value guarantee. The [policy owner] does not have the option of "deciding" to vanish premiums at an earlier date.
> . . . .
> The enclosed Vanishing Premium Illustration indicates that after the payment of $7[,]656.00 due February 1991 was applied, that one more annual premium in the amount of $7[,]656.00 will be due before the premiums will vanish. The illustration is based on the assumption that the current interest rate remains at 7.5%, no loans are taken and the cost of insurance does not increase. After the vanishing point, the death benefit would remain $200,000.00.

James McDonnell subsequently paid another premium in 1992 and asserts that he received assurances from Defendant McDonnell, Inc., that "this [would] positively be the last premium [he would] owe."

In 1993, James McDonnell received another premium invoice. As a result, James McDonnell contacted Defendant McDonnell, Inc., which informed him that it had checked with the Philadelphia Life and determined that one more full annual payment would result in the premiums being paid in full through 2007.[1] James McDonnell also sent a letter to Philadelphia Life on May 20, 1993, stating

---

[1] James McDonnell admitted in his deposition that he received no assurances from Philadelphia Life that the insurance policy was paid up until 2007. Rather, he stated that "[m]y recollection is I dealt only with Louis [an agent of Defendant McDonnell, Inc.].

that effective with the February 23, 1993[,] premium due of $7,656.00, I wish to discontinue premium payments on this policy. In essence, I am electing the option to "vanish" the premium.

It is my understanding that I will not make any further premium payments towards this contract, but I will continue to receive annual statements.

In 1994, James McDonnell received another premium invoice, which he did not pay. However, James McDonnell again contacted Defendant McDonnell, Inc., and was again assured by Defendant McDonnell, Inc., that no additional premiums were due until 2007. On February 10, 1994, Philadelphia Life sent James McDonnell a letter confirming that his policy was placed on the "optional premium payment" option as requested, and stating that no additional payments would be due so long as the policy's net cash value remained sufficient to cover the monthly deductions.

From the record, it appears that no premium notices were received, and thus no further payments required, from 1994 though 1996. However, on February 21, 1997, James McDonnell received another premium invoice stating that a premium of $637.97 was due. This statement indicated that should James McDonnell fail to pay the premium, then his insurance coverage would terminate or his applicable non-forfeiture option would take effect. A month later, he also received a letter from Philadelphia Life again stating that his policy was under the "optional premium payment provision" and that regular billings would not generate. On April 7, 1997, James McDonnell responded by sending Philadelphia Life a letter stating that he believed that the policy premiums had "vanished" and further stated that he had been "assured that under no circumstances would any premium be due though the year 2007 and that even then no premium would be due unless the minimum allowable interest rate exceeded a stated amount." On January 21, 1998, James McDonnell received another notice from Philadelphia Life stating that his policy had been placed on the "optional premium payment provision" and that under such option, regular billings would not generate. However, from the record, it appears that James McDonnell continued receiving premium notices for some time into 1998.

In December of 1997, James McDonnell transferred ownership of the life insurance policy in question to his three children: James McDonnell, III, Faith McDonnell Campbell, and Anne McDonnell Durell (cumulatively referred to with James McDonnell at times as "the Plaintiffs").[2] However, for tax purposes, James McDonnell borrowed $19,000 against the policy

---

[2]James McDonnell admitted in his deposition that, after transferring the policy to his children, he would no longer be responsible for making any payments on the policy. James McDonnell further stated that he was not surprised by the fact that he would no longer receive notices from the insurance company after transferring the policy to his children.

so that the total policy value, and gift value, would not exceed $60,000.[3] James McDonnell never paid back the loan.[4]

Several years later, on October 25, 2003, Defendant Conseco, successor to Philadelphia Life, sent James McDonnell, III, Faith McDonnell Campbell, and Anne McDonnell Durell, the new owners of the policy, a letter stating that due to an error, they had received no premium notices. As a result, Defendant Conseco stated that all premiums due through November 23, 2002, had been credited and requested a premium payment of $7,656 by November 25, 2003, in order to maintain coverage. The letter further stated that should the premium not be paid by that time, then the policy would revert to the appropriate non-forfeiture provision under the insurance contract. From the record, it appears that James McDonnell, III, sent this letter to James McDonnell sometime in November or December of 2003. James McDonnell subsequently faxed the letter to Defendant McDonnell, Inc., on December 31, 2003.

James McDonnell subsequently contacted Defendants McDonnell, Inc., and Conseco in an attempt to resolve the dispute. In April 2004, Defendant Conseco informed James McDonnell that a payment of $15,312.00 would be required to reinstate the policy.[5] After being advised by Defendant McDonnell, Inc., to send the payment until the dispute could be resolved, James McDonnell paid Defendant Conseco $15,312.00. However, Defendant Conseco later returned the payment and asserted that the policy had lapsed. As a result, Defendant Conseco refused to reinstate the policy unless, in addition to payment, James McDonnell submitted a new application for insurance and submitted to a medical examination.

---

[3]James McDonnell stated in his deposition that the first $19,000 check from Philadelphia Life was dishonored by the bank. However, he admitted that the problem was corrected and he did in fact receive $19,000 in proceeds from Philadelphia Life.

[4]When initially asked if he ever repaid the loan, James McDonnell stated as follows:

> In connection with what was transpiring in the year 2004, at their request, the insurance company's request, I guess Conseco's request, I received a bill from them for fifteen thousand some odd dollars.
> In conversations with David McDonnell [from Defendant McDonnell Insurance Co.], he told me that I should pay that $15,000 and then we could go forward with an investigation of whether I owed it or not. Whether that $15,000 was applied to a repayment of the loan or whether it was applied to a premium, I can't tell you.

However, on cross examination, James McDonnell admitted that he never repaid the $19,000 loan because he forgot about it. However, James McDonnell did state that he paid interest on the loan in either 2000 or 2001. When questioned as to whether he believed the life insurance policy was paid up despite his failure to repay the loan, James McDonnell stated that he believed the policy remained paid in full, but admitted that he had not read the policy in detail and could point to no contract provision stating that the policy remained paid in full despite the loan.

[5]James McDonnell disputed that the policy had terminated. The record further shows that at a hearing regarding motions for summary judgment, counsel for James McDonnell argued that the policy had not terminated because Defendant Conseco failed to adhere to Tennessee law by sending a proper notice of cancellation.

On June 7, 2004, James McDonnell filed suit seeking

> a declaratory judgment construing the contract of insurance, declaring the Policy to be in full force and effect, requiring Defendants to specifically perform the contract of insurance, declaring the premiums to be paid in full pursuant to the contract as represented by the parties, for damages against each Defendant in an amount to be determined at trial, and for such further and general relief to which Plaintiff may be entitled in the premises.[6]

Defendant Conseco subsequently moved for summary judgment arguing that James McDonnell lacked standing to assert his claims because he no longer owned the life insurance contract and, even if James McDonnell did have standing, his claims arising from alleged misrepresentations were barred under the applicable statute of limitations. Defendant McDonnell, Inc., likewise filed a motion for summary judgment. On May 23, 2005, the trial court denied the Defendants' motions for summary judgment and granted James McDonnell's motion to amend his complaint to add his children as additional plaintiffs. Defendant McDonnell, Inc., and Defendant Conseco subsequently sought reconsideration of their summary judgment motions. On October 13, 2005, the trial court entered an order reversing its prior denial of summary judgment and granted summary judgment based upon the statutes of limitation to Defendants McDonnell, Inc., and Conseco on the Plaintiffs' claims arising from alleged misrepresentations by Defendant McDonnell, Inc., on behalf of Defendant Conseco. In so doing, the trial court issued a nine-page ruling which was incorporated into the order granting summary judgment based upon the applicable statutes of limitation. The Plaintiffs appeal.

*Analysis*

Although we have not been presented with the issue of whether this Court has jurisdiction to hear this appeal, we may nonetheless consider the issue of subject matter jurisdiction pursuant to Rule 13(b) of the Tennessee Rules of Appellate Procedure, which states that "[t]he appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review . . . ." Tenn. R. App. P. 13(b) (2005).

Rule 3 of the Tennessee Rules of Appellate Procedure provides as follows:

> **(a) Availability of Appeal as of Right in Civil Actions.** In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at

---

[6] Defendant Conseco removed this case to the United States District Court for the Western District of Tennessee. However, the District Court subsequently remanded the case back to the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, Shelby County, after finding that total diversity did not exist between the parties.

any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all the parties.

Tenn. R. App. P. 3(a) (2005).

Rule 54.02 of the Tennessee Rules of Civil Procedure deals with the entry of final judgment when multiple claims are asserted within a case, and provides as follows:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon the express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of the parties.

Tenn. R. Civ. P. 54.02 (2005). As recognized by the Tennessee Supreme Court in *Fox v. Fox*, 657 S.W.2d 747 (Tenn. 1983),

> Rule 54.02 requires as an absolute prerequisite to an appeal the certification by the trial judge, first, that the court has directed the entry of a final judgment as to one or more but fewer than all of the claims, and, second, make an express determination that there is no just reason for delay. Such certification by the trial judge creates a final judgement appealable as of right under Rule 3 T.R.A.P. In the absence of such direction and determination by the trial judge, the order is interlocutory and can be revised at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties.

*Id.* at 749.

In the case at bar, the Plaintiffs asserted causes of action arising from alleged misrepresentations made to James McDonnell by Defendant McDonnell, Inc., on behalf of Defendant Conseco's predecessor in interest. The Plaintiffs also appear to have sought a judgment holding that the insurance policy was under full force and effect because Defendant Conseco violated Tennessee law by failing to send appropriate notice of cancellation of the

insurance policy prior to cancelling it.[7]  The Defendants moved for summary judgment on the grounds that all claims arising from the alleged misrepresentations by the Defendants were barred by the applicable statute of limitations.  The trial court subsequently granted the Defendants' motions regarding the statute of limitations.  However, the record does not show that the trial court ever affirmatively ruled on the Plaintiffs claim regarding whether Defendant Conseco violated Tennessee law by improperly cancelling the policy in 2003 without sending appropriate notice.  Furthermore, the record shows that the trial judge did not certify that she was entering final judgment as to fewer than all of Plaintiffs' claims and also failed to make an express determination that no just reason for delay existed for appeal upon her ruling concerning Plaintiffs' contract claims.  Therefore, since the prerequisites of neither Rule 3 of the Tennessee Rules of Civil Procedure nor Rule 54.02 of the Tennessee Rules of Appellate Procedure have been met, and since Plaintiffs have not sought an interlocutory appeal as allowed under Rule 9 of the Tennessee Rules of Appellate Procedure, we hereby dismiss the Plaintiffs' appeal for lack of

---

[7]The complaint is somewhat ambiguous in raising this issue.  As required under Rule 8.05 of the Tennessee Rules of Civil Procedure,

> [e]very pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged.

Tenn. R. Civ. P. 8.05 (2005).  After reviewing the contents of the complaint in this case, we note that the Plaintiffs failed to specifically refer to any Tennessee statute dealing with the cancellation of insurance policies although, on appeal, they cite to Section 56-7-2303 as the basis of their claim for improper termination of the policy.  As a result, this Court reviewed the complaint to determine if sufficient facts were pled so to duly apprise the Defendants of the alleged statutory violation.  Although a close call, we have determined that the Plaintiffs' complaint contained sufficient facts to apprise the Defendants of their claim.

Rule 8.06 requires that "[a]ll pleadings shall be so construed as to do substantial justice." Tenn. R. Civ. P. 8.06 (2005). *See also Lamons v. Chamberlain*, 909 S.W.2d 795 (Tenn. Ct. App. 1993) (holding that although a plaintiff failed to specifically plead that she sought rescission of a contract in her complaint, "[u]nder the liberal construction of pleadings in Tennessee, the wording of [the] plaintiff's complaint [did] not necessarily preclude rescission as a possible remedy.").  In the initial complaint in this case, James McDonnell asserted that Defendant Conseco contended that the policy had been cancelled and James McDonnell specifically sought a judgment declaring the insurance policy in question to be in full force and effect.  The same relief was sought in the amended complaint, which added all of the Plaintiffs as parties to this suit.  We further note that the issue of whether the insurance policy was properly cancelled was actually argued at the hearing regarding the Defendants' initial motions for summary judgment.  Specifically, at this hearing, counsel for Defendant Conseco argued that the policy had in fact been cancelled while counsel for the Plaintiffs argued that the policy had not been cancelled because Defendant Conseco failed to send an appropriate notice of cancellation as required under Tennessee law.  In their brief to this Court, Plaintiffs argue that Defendant Conseco specifically failed to adhere to the requirements of Section 56-7-2303 of the Tennessee Code by not sending proper notice of cancellation of the insurance policy to the Plaintiffs.  While Defendant Conseco contests that the Plaintiffs have a cause of action, we note that they have made no objection arguing that they were not sufficiently apprised of the Plaintiffs' potential cause of action under Section 56-7-2303.

subject matter jurisdiction. Costs of this appeal are taxed to Appellants, James W. McDonnell, Jr., Faith McDonnell Campbell, Anne McDonnell Durell, and James W. McDonnell, III, and their surety, for which execution may issue if necessary.


                                                _____

                                                DAVID R. FARMER, JUDGE